<table>
<tr><td>

**DISTRICT COURT, LARIMER COUNTY,
STATE OF COLORADO**

Court Address:  201 Laporte Avenue
                      Fort Collins, CO 80521

</td><td>

DATE FILED
December 29, 2025 2:08 PM
FILING ID: C8A104356D0A6
CASE NUMBER: 2025CV31214

</td></tr>
<tr><td>

Plaintiff: **BRET BURCH**

v.

Defendants: **RUST-OLEUM SALES COMPANY, INC. d/b/a MIRACLE SEALANTS and HOME DEPOT U.S.A., INC.**

</td><td>

▲ COURT USE ONLY ▲

</td></tr>
<tr><td>

*Attorney for Plaintiff:*
Adam J, Detsky, #47999
RAMOS LAW
10190 Bannock Street, Suite 200
Northglenn, Colorado 80260
Phone Number: (720) 580-8334
FAX Number: (303) 865-5666
E-mail: adetsky@ramoslaw.com

</td><td>

Case Number:

Division:

</td></tr>
</table>

### CIVIL COMPLAINT AND JURY DEMAND

**COMES NOW**, Plaintiff, Brett Burch, by and through his attorneys, Ramos Law, as and for this Civil Complaint and Jury Demand against Defendants Rust-Oleum Sales Company, Inc. d/b/a Miracle Sealants ("Defendant Rust-Oleum") and Home Depot U.S.A., Inc. ("Defendant Home Depot") hereby alleges and avers as follows:

### INTRODUCTION

1. This is an action for product liability sounding in strict liability, negligence, and premises liability which arises out of damages for personal injuries sustained by Mr. Bret Burch ("Plaintiff" or "Mr. Burch") on June 7, 2024 (the "Incident"), when Plaintiff was sprayed in the face by a bursting or otherwise open container of 511 Impregnator – a product manufactured by Defendant Rust-Oleum – and which was mishandled by Defendant Home Depot at their location on Magnolia Street in Fort Collins, Colorado.

Exhibit A

1

2.    As a result of the Defendant Rust-Oleum's defective product packaging and their negligent acts and omissions, as well as Defendant Home Depot's failure to inspect its products and shelves and to warn of dangerous conditions to its invitees, Plaintiff endured and continues to endure significant pain and suffering, permanent impairment ,economic damages and losses, noneconomic damages and losses as set forth herein.

## PARTIES, JURISDICTION, AND VENUE

3.    At all times relevant to this action, Plaintiff was and is a resident of the State of Colorado, residing at 1726 Deep Woods Lane, Fort Collins, CO 80524.

4.    At all times relevant to this action, Defendant Rust-Oleum Sales Company, Inc. d/b/a "Miracle Sealants" was and is a Foreign Corporation conducting business in the State of Colorado, with a principal office street address of 11 E. Hawthorn Parkway, Vernon Hills, IL 60061 and a registered agent of John Newell, 1550 Larimer Street, Denver, CO 80202.

5.    At all times relevant to this action, Defendant Home Depot U.S.A., Inc. was and is a Foreign Corporation conducting business in the State of Colorado, with a principal office street address of 2455 Paces Ferry Road, Atlanta, GA 30339-4024 and a registered agent of Corporation Service Company, with a principal street and mailing address of 1900 W Littleton Blvd., Littleton, CO 80120.

6.    The incident that is the subject of this lawsuit occurred at the Home Depot, located at 1251 E. Magnolia Street, Fort Collins, CO 80524 in Larimer County.

7.    Jurisdiction and venue are proper in Larimer County District Court pursuant to C.R.C.P. 98(c).

## GENERAL ALLEGATIONS

8.    Plaintiff incorporates the allegations stated with specificity in the foregoing paragraphs as though set forth verbatim below.

9.    All claims herein against the respective Defendants include their respective employees, assigns, contractors, and agents.

10.    Defendant Rust-Oleum is an industry-leading manufacturer and producer of protective paints and coatings for home and industrial use.

11.    Defendant Rust-Oleum manufactures and sells products worldwide, including at national and international chains such as Home Depot, Walmart, Target, Lowes and other globally recognized retailers.

2

12.     Defendant Rust-Oleum manufactures products under a wide variety of trade names and brands, including but not limited to EpoxyShield, Modern Masters, Mean Green and others.

13.     One brand manufactured by Defendant Rust-Oleum is a brand named Miracle Sealants.

14.     Miracle Sealants is the brand used for the manufacture of premium quality, professional-grade sealers, cleaners, polishes and related solutions for tile, grout, natural stone, brick and masonry surfaces that has broad national distribution in tile shops across the United States as well as in big box retailers.

15.     One such product owned and marketed by Defendant Rust-Oleum is 511 Impregnator.

16.     511 Impregnator is marketed as the original penetrating sealer designed for the protection of all medium to dense porous surfaces, forming an invisible barrier that is resistant to moisture and stains while allowing vapor to escape.

17.     511 Impregnator is a category 4 flammable liquid.

18.     511 Impregnator is a category 1 aspiration hazard that may be fatal if swallowed and enters the airways.

19.     511 Impregnator is a category 2 skin irritant.

20.     511 Impregnator is a category 2A eye irritant.

21.     511 Impregnator is a category 2 carcinogenic.

22.     511 Impregnator instructs that it should not be handled without protective gloves, protective clothing, eye protection and face protection.

23.     511 Impregnator provides that, if it gets in eyes, to rinse continuously for several minutes and get medical advice.

24.     According to the Safety Data Sheet, Rust-Oleum is the manufacturer of the product.

25.     On June 7, 2024, outdoor temperatures exceeded 90 degrees in the hours leading up to the Incident.

26.     Temperatures outdoors also exceeded 90 degrees in the days preceding the Incident.

27.     The 511 Impregnator sealant contains petroleum distallates and solvents.

3

28.     The Material Safety Data Sheet explicitly warns that containers myst be cooled to prevent rupturing and bursting when exposed to heat.

29.     When exposed to heat such as a hot storage environment, pressure can build inside the sealed container, causing it to potentially burst or rupture.

30.     The product's MSDS specifies that it should be stored as a NFPA Class II combustible liquid – which are liquids that are fire hazards.

31.     Common examples of class II combustible liquids includes diesel fuel, kerosene and motor oil.

32.     Defendant Home Depot is a multi-national home improvement retail corporation that sells tools, construction products, appliances, and services.

33.     Defendant Home Depot is the largest home improvement retailer in the United States that, as of 2021, had 490,600 employees and more that $151 billion in revenue.

34.     Defendant Home Depot operates big-box format stores across the United States, including 70 distribution centers in the United State alone.

35.     On June 7, 2024, Plaintiff visited his local Home Depot store located at 1251 E. Magnolia Street, Fort Collins, CO 80524 in Larimer County ("the Store").

36.     Plaintiff went to the store for the purpose of purchasing mastic for a home improvement product used as an adhesive or sealant for installing tile.

37.     The Store carried multiple sizes of 511 Impregnator bottles.

38.     Upon information and belief, Plaintiff found the mastic he was looking for on Shelf 8, Aisle 39.

39.     At the time of Incident, Plaintiff was using a scooter due to an ankle surgery approximately one month earlier.

40.     In order to reach the bottle he wanted, he had to first move bottle of 511 Impregnator Sealer that was in the way.

41.     As Plaintiff moved the bottle out of the way, the content of the bottle erupted upward, coming out of the bottle.

42.     The 511 Impregnator splashed out of the bottle sufficiently to splash into his face, eyes, and onto his body.

4

43.    Plaintiff contemporaneously reported that the bottle of 511 Impregnator sprayed him from head to toe and in both eyes.

44.    Plaintiff's wife, who was with him in the Store, went to find assistance.

45.    Upon information and belief, it took employees approximately 15 minutes to respond.

46.    Eventually, a person believed to be Nathan Staats – the then-Operations Manager for the Store, guided Plaintiff to the eye-wash station.

47.    At the eyewash station, Plaintiff continued to complain of not being able to see clearly.

48.    The Store's eye-wash station was blocked by pallets and materials that had to be moved before they could access the eye-wash station.

49.    Plaintiff reported at the time being unable to see with both eyes, burning sensation on his face and chest, as week as neck, back and hip pain from herking back.

50.    Plaintiff immediately began experiencing a burning sensation and acute visial impairment.

51.    Upon information and belief, a male Home Depot employee guided him to an eyewash station.

52.    Plaintiff flushed his eyes and face with the eye wash, but symptoms persisted.

53.    Plaintiff was taken by his wife to Poudre Valley Medical Center where he underwent treatment for chemical burns to the face, eye exposure and ongoing visual disturbances in his right eye.

54.    At Poudre Valley Hospital, Plaintiff was treated for chemical exposure and eye irritation.

55.    Upon information and belief, no contemporaneous incident report was prepared by Defendant Home Depot.

56.    Upon information and belief, a video surveillance camera pointed directly at the aisle when the Incident occurred.

57.    Upon information and belief, that video was not preserved by Defendant Home Depot.

58.     Upon information and belief, the bottle that spilled and splashed Plaintiff was not preserved by Defendant Home Depot.

59.     As noted elsewhere herein, Plaintiff was ambulating with the assistance of a scooter at the time of the Incident.

60.     Plaintiff was using a scooter at the time of the Incident because, approximately 24 days earlier – May 13, 2024, Plaintiff underwent surgery for a partial thickness Achilles tendon tearing in his left lower extremity that included a debridement and repair of the tendon (left foot).

61.     Following the May 13, 2024 surgery, Plaintiff was seen by his surgeon on May 21, 2024 for post-surgery evaluation where Plaintiff spoke of a lack of pain since the surgery and the doctor noted that the operative sites to the left foot and posterior left heel were well co-apted with suture intact and that Plaintiff was "progressing well without complication."

62.     Plaintiff returned for a second post-operative visit on June 4, 2024 with Dr. Joshua Rawa – three days before the Incident – and again the sutures were noted as intact.

63.     At that June 4, 2024 appointment, sutures were removed revealing "well-healed operative sites."

64.     Following the Home Depot Incident, plaintiff began experiencing pain in his left Achilles area again, as well as swelling and additional MRI's were ordered.

65.     Following the new MRI, Plaintiff's surgeon determined that the MRI showed "traumatic injury of the left lower extremity in the postoperative state.  It is my opinion that his previously repaired Achilles tendon was injured in the postoperative period during his trauma at Home Depot."

66.     Dr. Rawa, Plaintiff's surgeon, further noted that the postoperative trauma caused "new severe Achilles Tendinosis and low-grade interstitial tearing near the insertion and that Plaintiff would likely require repeat surgical intervention and that "his interstitial tearing and current pain are unrelated to the initial procedure and related to his trauma incurred in the postoperative period."

67.     Following this diagnosis, Plaintiff was advised that he would need to have another surgery on his Achilles tendon.

68.     Plaintiff was advised to avoid weightbearing when possible but that he may do some ambulating and movement.

69.     On November 17, 2024, Plaintiff was doing some light work at home regarding a security camera.

70.    While climbing the ladder, Plaintiff was climbing his ladder when his left foot gave out on him, causing him to miss a rung on the ladder.

71.    Plaintiff fell from the ladder, suffering a closed displaced fracture of the surgical neck of the left humerus and closed fracture of the left radius, in addition to a closed head injury, a cervical spine fracture and potential skull fracture, amongst other injuries.

72.    This ladder incident is directly attributable to the injuries he sustained in the June 7, 2024 Incident.

73.    Plaintiff subsequently underwent a left ankle secondary repair of the Achilles tendon with graft and lateral ligamentous complex on April 28, 2025.

74.    As a direct and proximate result of Defendant Rust-Oleum's negligence, and the defective condition of the subject product, the defective packaging, defective warnings, and corrosive nature of the product, plaintiff suffered severe physical injuries as a result of the incident, which have necessitated, *inter alia*, a surgery, broken bones, extensive wound-care management, and permanent physical impairment.

75.    As a result of Defendant Home Depot's negligence, Plaintiff suffered physical injuries, pain and suffering, loss of enjoyment of life, emotional distress, mental anguish, and permanent impairment and disfigurement.

76.    Plaintiff's injuries necessitated past medical-related expenses and will necessitate future medical-related expenses.

77.    Plaintiff was not negligent in the above-referenced incident.

78.    A bottle of sealant should not open and splash simply by being slightly moved on the shelf where it is for sale.

79.    Plaintiff did not misuse the product.

80.    Plaintiff did not cause the above-referenced Incident.

81.    Plaintiff has not failed to mitigate his damages.

## FIRST CLAIM FOR RELIEF – STRICT PRODUCT LIABILITY
### *Against Defendant Rust-Oleum d/b/a Miracle Sealant*

82.    Plaintiff hereby incorporates all of the allegations stated in the foregoing paragraphs as though set forth verbatim below.

83.    Defendant Rust-Oleum was a manufacturer of the subject sealant.

84.    Defendant Rust-Oleum was engaged in the business of selling such bottles of sealant for use.

85.    Defendant Rust-Oleum sold and distributed the Product.

86.    Defendant Rust-Oleum, acting as manufacturers, sellers, distributors, and suppliers of the subject product and its packaging, placed the product into the stream of commerce.

87.    The subject product and its packaging was defective, and because it burst was unreasonably dangerous to a person who might reasonably be expected to use the product or be affected by the product packaging.

88.    Plaintiff was a person who would reasonably be expected to use, consume or be affected by the subject product and packaging.

89.    Defendant Rust-Oleum knew, or in the exercise of reasonable care should have known, that the manner in which the product was packaged created a foreseeable risk that the packaging could fail under heat or pressure.

90.    The risk of harm created by the packaging and its use was not obvious to a reasonable consumer or user.

91.    Because Defendant Rust-Oleum knew or should have known of the risk of injury associated with the product and it's packaging, Defendants had a duty to provide adequate warnings, instructions, or disclosures informing consumers and end-users about the danger of bursting/exploding and/or leaking, including warnings regarding safe methods for handling.

92.    Defendants failed to provide any warning—on the packaging, in accompanying materials, on order documentation, or in any other form—regarding the risk of bursting, exploding or leaking.

93.    Defendants' failure to warn rendered the product and its packaging unreasonably dangerous and defective because consumers could not, and were not expected to, discover the danger through ordinary observation or use.

94.    As a direct and proximate result of Defendant Rust-Oleum's failure to warn, Plaintiff used ordinary and foreseeable force to shift the product on the shelf and suffered a severe injury when it sprayed Plaintiff.

95.    As a direct and proximate result of defective product and packaging, Plaintiff suffered physical injuries, pain and suffering, loss of enjoyment of life, emotional distress, mental anguish, permanent impairment and disfigurement.

96.     The defect in the product packaging was a cause of Plaintiff's injuries, damages, and losses.

97.     Defendant's failure to warn was also a cause of Plaintiff's injuries, damages, and losses.

98.     Had an adequate warning been provided regarding the bursting, expoloding or leaking within the packaging or the need for tools or precautions when touching the package, Plaintiff would have taken appropriate safety measures and avoided injury.

99.     Plaintiff's injuries resulted and will result in past and future medical-related expenses.

**SECOND CLAIM FOR RELIEF – PRODUCT LIABILITY**
**FOR BREACH OF WARRANTY**
*Against Defendant Rustoleum d/b/a Miracle Sealant*

100.     Plaintiff hereby incorporates all of the allegations stated in the foregoing paragraphs as though set forth verbatim below.

101.     Defendant Rust-Oleum was involved in the manufacture, sale, distribution, supply, or delivery of the subject packaged product that ultimately caused Plaintiff's injury.

102.     Plaintiff was a person whom Defendants reasonably expected to use, handle, open, or otherwise be affected by the product and its packaging in the ordinary course of business.

103.     At all relevant times, Defendant Rust-Oleum was a merchant with respect to the type of product involved, and held themselves out as knowledgeable, skilled, and experienced in the manufacturing, packaging, handling, transporting, or selling of such goods.

104.     The subject product and its packaging were not of merchantable quality at the time of sale.

105.     Defendant Rust-Oleum's sale, distribution, and delivery of a product with non-merchantable packaging constituted a breach of the implied warranty of merchantability. The product, as sold, was unsafe, defective, and unfit for its ordinary and foreseeable use.

106.     As a direct and proximate result of Defendant Rust-Oleum's breach of warranty, Plaintiff suffered serious personal injuries, pain, scarring, medical expenses, emotional distress, and other economic and noneconomic damages.

107.    Plaintiff is entitled to recover all damages allowed under Colorado law for Defendants' breach of warranty, including personal injury damages, economic losses, noneconomic losses, and all other relief the Court deems just and proper.

<u>**THIRD CLAIM FOR RELIEF – NEGLIGENCE**</u>
*Against Defendant Rust-Oleum d/b/a Miracle Sealant*

108.    Plaintiff hereby incorporates all allegations stated in the paragraphs above and below as though set forth verbatim below.

109.    Defendant Rust-Oleum owed Plaintiff, and other individuals reasonably expected to handle the product a duty to exercise reasonable care in the design, preparation, inspection, packaging, labeling, loading, transportation, handling, delivery, and sale of the product and its packaging so that it would be reasonably safe for its intended and foreseeable use.

110.    Defendants breached their duties of reasonable care by, inter alia:

a.    failing to properly design, assemble, secure, or seal the packaging;

b.    failing to follow reasonable and accepted packaging standards and practices that would have prevented the Incident and injuries;

c.    failing to reasonably inspect the bottle at any stage —manufacture, loading, transit, or delivery—for damage, tampering, protrusions, exposed contents, or other indicators of hazardous conditions;

d.    handling, loading, transporting, or delivering the packages in a reckless or unreasonably rough manner likely to compromise the integrity of the packaging;

e.    failing to implement, enforce, and supervise adequate safety protocols, training, and oversight regarding the preparation, inspection, and delivery of the product; and

f.    Failing to properly advise downstream sellers of the dangers presented by the toxic chemical and its packaging.

111.    Defendant Rust-Oleum knew or in the exercise of reasonable care should have known that the conduct described above created an unreasonable risk that persons such as Plaintiff—who would foreseeably touch the product's outer packaging by hand in the ordinary course of shopping—would be exposed to dangerous conditions.

112.    Upon information and belief, one or more Defendants negligently or recklessly mishandled, inspected, packaged, or delivered the subject shipment in a manner that allowed a razor blade to become or remain concealed within the packaging, and further failed to warn Plaintiff or others of the dangerous condition they created or permitted to exist.

113.    Defendants also breached their duties of reasonable care in the hiring, training, supervision, and retention of the employees, contractors, or agents involved in the preparation, inspection, transport, and delivery of the subject packages, including Defendants John Doe ISP and John Doe Employee, whom Defendants knew or should have known were unfit, inadequately trained, or inadequately supervised for the tasks they were assigned.

114.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered severe and permanent injuries, pain and suffering, emotional distress, loss of enjoyment of life, scarring and disfigurement, and other noneconomic damages.

115.    As a further direct and proximate result of Defendants' negligence, Plaintiff incurred past medical expenses and will continue to incur future medical-related expenses.

### THIRD CLAIM FOR RELIEF – PRODUCT LIABILITY
### FOR BREACH OF WARRANTY
*Against Defendant Home Depot*

116.    Plaintiff hereby incorporates all of the allegations stated in the foregoing paragraphs as though set forth verbatim below.

117.    Defendant Home Depot was involved in the manufacture, sale, distribution, supply, or delivery of the subject packaged product that ultimately caused Plaintiff's injury.

118.    Plaintiff was a person whom Defendant reasonably expected to use, handle, open, or otherwise be affected by the product and its packaging in the ordinary course of business.

119.    At all relevant times, Defendant Home Depot was a merchant with respect to the type of product involved, and held themselves out as knowledgeable, skilled, and experienced in the manufacturing, packaging, handling, transporting, or selling of such goods.

120.    The subject product and its packaging were not of merchantable quality at the time of sale.

121.    Defendant Home Depot's sale, distribution, and delivery of a product with non-merchantable packaging constituted a breach of the implied warranty of merchantability. The product, as sold, was unsafe, defective, and unfit for its ordinary and foreseeable use.

122.    As a direct and proximate result of Defendant Home Depot's breach of warranty, Plaintiff suffered serious personal injuries, pain, scarring, medical expenses, emotional distress, and other economic and noneconomic damages.

11

123.    Within a reasonable time after discovering the breach of warranty, Plaintiff notified Defendant Home Depot, including by reporting the incident to Home Depot contemporaneously, documenting the condition of the packaging, and communicating that the product sprayed all over his eyes, face and body.

124.    Defendant Home Depot thereby received timely notice of the breach and resulting harm.

125.    Despite Home Depot being a sophisticated business with training, procedures, standards and guidelines in place for recording and documenting incidents, no contemporaneous report was made.

126.    Plaintiff made numerous attempts to document the Incident but Home Depot purposely and intentionally did not record the incident.

127.    Defendant Home Depot also knew of the urgency of the Incident, escorting Plaintiff to they eye wash station and directing him on washing his body.

128.    Defendant Home Depot removed the offending bottle off the shelves.

129.    Defendant Home Depot, knowing that the bottle may have caused injury, knowingly and intentionally failed to preserve the bottle.

130.    The failure to preserve the bottle constituted intentional destruction of vital evidence.

131.    Plaintiff is entitled to recover all damages allowed under Colorado law for Defendants' breach of warranty, including personal injury damages, economic losses, noneconomic losses, and all other relief the Court deems just and proper.

## FIFTH CLAIM FOR RELIEF - PREMISES LIABILITY
### *Against Defendant Home Depot*

132.    Plaintiff hereby incorporates all of the allegations stated in the foregoing paragraphs as though set forth verbatim below.

133.    At all relevant times, Plaintiff was an invitee as defined by the Colorado Premises Liability Act. § 13-21-115(5)(a), C.R.S.

134.    Pursuant to the Premises Liability Act, Home Depot was a "landowner" at the time of the incident. C.R.S. § 13-21-115(1) ("For the purposes of this section, 'landowner' includes, without limitation . . . a person legally responsible for the condition of real property or for the activities conducted or circumstances existing on real property.").

12

135.    Home Depot, as the "landowner" of the subject premises, had a duty to use reasonable care to maintain the Property in a reasonably safe manner at the time of the incident, and to use reasonable care to protect Plaintiff against dangers of which Defendant knew or should have known. § 13-21-115, C.R.S.

136.    Home Depot knew or should have known that a dangerous condition existed on the Property at the time of the incident.

137.    Home Depot knew or should have known that the lack of warnings, signage, or other notification to customers constituted a dangerous condition.

138.    Home Depot knew or should have known that the store stores and sells toxic chemicals that are often stored under pressure and high temperatures.

139.    Home Depot knew or should have known that failure to inspect products on its shelves, warn or remediate the condition, or place warning signs created a dangerous situation, could result in injuries to those lawfully traversing the property.

140.    It was foreseeable to the Home Depot Defendant that invitees such as Plaintiff would be injured by chemicals and products not safely stored and packaged on its shelves.

141.    Defendant Home Depot was legally responsible for the condition of the Property and/or for the activities conducted and/or circumstances existing described herein, and they, or their agents and/or employees, unreasonably failed to exercise reasonable care to protect Plaintiff and others similarly situated.

142.    Defendant Home Depot failed to comply with its duties to the Plaintiff in the following respects, including, but not limited to:

    a.  Failure to post signs;
    b.  Failure to place caution cones or other signage;
    c.  Failure to inspect its shelves;
    d.  Failure to monitor for defective products or packaging;
    e.  Failure to inspect and monitor for leaking products or improperly secured products
    f.  Failure to warn of possible danger;
    g.  Failing to keep the store at temperatures that prevent product overheating;
    h.  Failure to have an eye wash station free and available, unblocked by pallets and boxes;
    i.  Failure to timely respond to an Incident;
    j.  Failure to properly store defective products or packaging;
    k.  Failure to properly records incidents and preserve evidence;
    l.  Failure to exercise reasonable care to prevent dangerous conditions in the public access areas where invitees would be expected to be;

m. Failure to mediate and mitigate the danger; and

n. Failure to have in place procedures to protect the public the condition on the Property.

143. In breach of their legal duty, Defendant Home Depot failed to use reasonable care to protect against the dangerous condition on the Property and/or to warn invitees such as Plaintiff.

144. As a direct and proximate result of the Defendant Home Depot's failure to exercise reasonable care to protect Plaintiff from the dangerous condition described above, Plaintiff suffered physical injuries.

145. As a direct and proximate result of the Defendant Home Depot's failure to exercise reasonable care to protect Plaintiff from the dangerous condition described above, Plaintiff suffered past and future economic expenses, losses, and damages including, but not limited to, past and future medical expenses, permanent impairment and loss of enjoyment of life.

146. As a direct and proximate result of the Defendant Home Depot's failure to exercise reasonable care to protect Plaintiff from the dangerous condition described above, Plaintiff suffered past and future noneconomic damages including, but not limited to, pain and suffering, inconvenience, emotional distress, and impairment of quality of life.

147. As a direct and proximate result of the Home Depot Defendant's failure to exercise reasonable care to protect Plaintiff from the dangerous condition described above, Plaintiff suffered temporary and permanent physical impairment and disfigurement.

**WHEREFORE**, Plaintiff, Bret Burch, prays for entry of Judgment in his favor and against Defendants in an amount to be determined at trial, and for pre- and post-judgment interest, attorney fees and costs, expert witness fees, and for such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff Bret Burch demands trial to a jury of six (6) on all claims set forth herein.

DATED: December 29, 2025.

Respectfully submitted,

**RAMOS LAW**

_____
Adam Detsky, #47999
*Attorney for Plaintiff*

14

*This pleading was filed electronically pursuant to Rule 121 § 1-26*
*Original signed pleading is on file in counsel's office.*

Plaintiff's Address
c/o Ramos Law
10190 Bannock Street, Suite 200
Northglenn, CO 80260